UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIRECT ENERGY BUSINESS MARKETING, LLC,<br><br>  Plaintiff<br><br>-against-<br><br>ECTOR COUNTY ENERGY CENTER LLC, INVENERGY LLC, and INVENERGY THERMAL OPERATING I LLC,<br><br>  Defendants. | Civil Action No._____<br><br>**NOTICE OF REMOVAL** |

PLEASE TAKE NOTICE that defendant Ector County Energy Center LLC ("Ector", "ECEC" or "Debtor") files this Notice of Removal pursuant to 28 U.S.C. §§ 1334, 1446 and 1452 and Federal Rule of Bankruptcy Procedure 9027 and removes to this Court the above-captioned action ("State Court Action") from the Supreme Court of the State of New York, County of New York, Commercial Division ("State Court"), and all claims and causes of action asserted therein. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). In support of this Notice of Removal, Ector[1] states as follows:

1. This action was commenced by plaintiff Direct Business Marketing, LLC ("Direct" or "Plaintiff") against Ector and Invenergy LLC on June 21, 2021, by the filing of a summons and complaint in the State Court. Ector and Invenergy LLC were served with the summons and complaint on July 7, 2021 and July 6, 2021, respectively.

---

[1] In filing this Notice of Removal, Ector reserves, and does not waive, any of its rights or defenses in the State Court Action.

2. On January 27, 2022, Direct filed an amended complaint in the State Court ("Amended Complaint"), adding as a defendant, Invenergy Thermal Operating I LLC ("Invenergy Thermal" and collectively with Ector and Invenergy LLC, "Defendants"). Counsel for Invenergy Thermal accepted service of the Amended Complaint.[2]

3. In accordance with Federal Rule of Bankruptcy Procedure 9027(a)(1), true and correct copies of all process and pleadings filed in the State Court Action are attached as Exhibit A to this Notice of Removal. A list of the docket entries as of the date of this filing is attached hereto as Exhibit B. If additional documents relating to the State Court Action are required, Ector will submit such documents.

4. On April 11, 2022, Ector filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in Delaware Bankruptcy Court, *In re Ector County Energy Center, LLC*, Case No. 22-10320-JTD (Bankr. D. Del.). Ector's chapter 11 case has been assigned to the Honorable John T. Dorsey of the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court").[3]

## BACKGROUND

**A.    State Court Action**

5. The State Court Action arises from a heat rate call option (the "Agreement") between Ector and Direct. The State Court Action presents, among other subjects, whether the Agreement permits Direct to recover over $400 million based on unprecedented, artificially-high energy prices that crippled the Texas energy market during a once-in-a-generation ice storm in February 2021, and whether Ector is excused from performance.

---

[2] Invenergy Thermal and Invenergy LLC consent to the removal of the State Court Action.

[3] Upon removal, Ector intends to seek a transfer of this action to the United States District Court for the District of Delaware for referral to the Delaware Bankruptcy Court.

6. Ector is the owner and operator of a gas-fired power plant in Ector County, Texas. *See* Ex. A-12 (Dkt. No. 70) ¶¶ 3, 14.[4] In October 2017, Ector and Direct entered into the Agreement, embodied in an ISDA 2002 Master Agreement and associated transaction confirmation, with Direct. *Id.* ¶ 23. The Agreement could require monthly payments from Ector to Direct—or just the reverse—depending on a variety of factors and market conditions. *Id.* ¶¶ 28-31, 33.

7. The Agreement contains a *force majeure* provision. Direct admits that the provision is triggered in the event that a party "is prevented from performing any absolute or contingent obligation to make a payment or delivery in respect of such Transaction[.]" *See* Ex. A-12 (Dkt. No. 70) ¶ 27. The Agreement excuses a party's performance if it is prevented "from complying with any other material provision of this Agreement relating to such Transaction" as long as the *force majeure* event "is beyond the control" of such party and that party "could not, after using all reasonable efforts (which will not require such party . . . to incur a loss other than immaterial, incidental expenses) overcome such prevention, impossibility or impracticability." *See* Ex. A-14 (Dkt. No. 72) § 5(b)(ii)(1) at 8-9.

8. In February 2021, the State of Texas was hit with a crippling ice storm, known as Winter Storm Uri. Direct admits that Winter Storm Uri caused a "massive power grid outage crisis[.]" Ex. A-12 (Dkt. No. 70) ¶ 45.

9. On February 13, 2021, Ector declared *force majeure* due to Winter Storm Uri and its consequences. Ex. A-12 (Dkt. No. 70) ¶ 47; Ex. A-16 (Dkt. No. 74). Direct rejected Ector's declaration on February 18, 2021, and asserted Ector's continuing duty to perform. Ex. A-12 (Dkt. No. 70) ¶ 49. On February 23, 2021, Ector notified Direct that the *force majeure* event was

---

[4] "Dkt. No." refers to the docket entries in the State Court Action.

abating, and that Ector was not aware of any "remaining circumstances that would prevent contractual performance." *Id.* ¶ 50; Ex. A-17 (Dkt. No. 75).

10. Direct responded one day later by rejecting Ector's *force majeure* notice as "improper under the Agreement and reasserted ECEC's obligation to pay." Ex. A-12 (Dkt. No. 70) ¶ 51. Instead of a monthly reconciliation amount between the parties that varied between approximately $595,000 and $1.2 million under the Agreement (*see id.* ¶ 33), Direct alleges that for the month of February 2021, when Winter Storm Uri hit Texas and Ector declared *force majeure*, Ector somehow became obligated to pay nearly $400 million under the Agreement, an amount astronomically higher than any other monthly reconciliation payment under the Agreement. *Id.*

11. Direct admits that, pursuant to the Agreement, the parties furnished letters of credit to secure their obligations to each other. Ex. A-12 (Dkt. No. 70) ¶ 38. Ector funded a $7 million letter of credit in favor of Direct, and Direct allegedly provided Ector with a letter of credit in the amount of $24,480,000. *Id.*

12. On May 25, 2021, Direct issued an invoice to Ector for all amounts allegedly owed—over $393.1 million—with a due date of the same day. Ex. A-12 (Dkt. No. 70) ¶¶ 61, 68. Direct alleges that on June 7, 2021, Ector issued a certificate to Credit Suisse and "falsely alleged that $840,147.98 was due and owed under the Agreement[.]" *Id.* ¶ 65-66. The Amended Complaint admits, however, that the drawdown amount was exactly the sum that Direct owed Ector under the Agreement for January 2021. *Id.* ¶ 33.

13. On June 17, 2021, Direct commenced the State Court Action against Ector and Invenergy LLC. On January 27, 2022, Direct filed the Amended Complaint, which added Invenergy Thermal as a defendant.

14. Invenergy LLC and Invenergy Thermal are not parties to the Agreement between Ector and Direct. In the Amended Complaint, Direct alleges that Invenergy LLC and Invenergy Thermal are both alter egos of Ector. *See* Ex. A-12 (Dkt. No. 70) ¶¶ 12, 75-78. As a result, Direct's basis of liability as against Invenergy LLC and Invenergy Thermal is based almost exclusively on their status as the alleged alter egos of Ector. The only cause of action that is not based on alter ego is a claim for tortious interference with the Agreement, asserted against Invenergy LLC, which is alleged in the alternative to Direct's alter ego claim against Invenergy LLC. *Id.* ¶ 96.

15. On March 15, 2022, Ector filed a partial motion to dismiss the Amended Complaint. The same day, March 15, 2022, Invenergy LLC and Invenergy Thermal filed a separate motion to dismiss all causes of action asserted against them.

**B.     Ector's Bankruptcy**

16. Following Winter Storm Uri and the purported termination of the Agreement, Ector shifted its primary operations, which resulted in uneven cash flow for Ector. *See* Declaration of John Baumgartner, Chief Restructuring Officer, in Support of Chapter 11 Petition, First Day Motions, and Related Relief ¶ 15 (Bankr. D.I. 2), attached hereto as Exhibit D.[5] This change in cash flow, the expenses and distraction from the State Court Action and other litigations arising from Winter Storm Uri and its fallout, together with market factors and seasonal trends, caused Ector to pursue a sale of its power plant. *Id.* ¶¶ 14-16.

17. On April 11, 2022, Ector filed its chapter 11 bankruptcy petition in the Delaware Bankruptcy Court, attached hereto as Exhibit C. In the bankruptcy, Ector is pursuing a sale of its power plant under Section 363 of the Bankruptcy Code. Net proceeds from the sale are to be

---

[5] "Bankr. D.I." refers to docket entries in Ector's bankruptcy case.

distributed to Ector's creditors under a to-be-filed liquidating chapter 11 plan. *See* Ex. D (Bankr. D.I. 2) ¶ 70.

18. Direct purportedly holds a disputed, unliquidated, unsecured claim for damages in the approximate amount of $403 million—which are the damages that Direct is seeking in the State Court Action. *See* Ex. D (Bankr. D.I. 2) ¶ 51. If deemed allowed, Direct would hold, by far, the largest unsecured claim against the estate. *See* Ex. C (Bankr. D.I. 1) at 12.

**C.     Direct's Actions in Delaware Bankruptcy Court and in State Court**

19. Following Ector's bankruptcy filing, Direct has attempted to litigate the same issues and the same subject matter before two courts: the Delaware Bankruptcy Court and the State Court.

20. On April 13, 2022, in Delaware Bankruptcy Court, Direct filed a preliminary objection to Ector's cash collateral motion, attached hereto as Exhibit E. In its objection, Direct asserted the same allegations it made in the State Court Action. *Id.*

21. In its preliminary objection, Direct continued to claim that it is owed more than $403 million for Ector's purported breach of the Agreement. *See* Ex. E (Bankr. D.I. 55) ¶ 10. Direct stated that its claim is "largely a simple and clear breach of contract claim under a straightforward financial agreement pursuant to an ISDA Master Agreement." *Id.* ¶ 2. Direct also repeated the same alter ego allegations against Invenergy LLC and Invenergy Thermal that it asserted in State Court. *Id.* ¶ 1.

22. During Ector's First Day Hearing, held on April 13, 2022, Direct continued to make the same unfounded arguments as it made in its preliminary objection and in the State Court Action. *See* April 13, 2022 Hr'g Tr., excerpts attached hereto as Exhibit F. During the hearing, Direct "previewed" various objections and contested motions that it is considering filing in Ector's bankruptcy, many of which are based on the same claims and arguments Direct made in the State Court Action. *Id.* at 38:13-49:19.

23.     On April 14, 2022, in State Court, Direct filed its opposition to Invenergy LLC's and Invenergy Thermal's motion to dismiss, attached hereto as Exhibit G.[6] In its opposition, Direct repeatedly referenced Ector's bankruptcy as purported support for the claims. For instance, Direct asserted:

- "Through bankruptcy, any proceeds from the sale of ECEC would first go to Invenergy's secured creditors, like Credit Suisse, leaving Plaintiff high and dry." *See* Ex. G (Dkt. No. 131) at 1.

- "In what they hope will be the final step in their plan to escape liability, Defendants—led by Invenergy—have caused ECEC's meritless bankruptcy filing, which DE is challenging in bankruptcy court." *Id.* at 2.

- "Defendants' plan to sell the ECEC plant and settle Invenergy's debt with Credit Suisse illustrate a classic alter-ego set up . . . ." *Id.* at 12.

- "ECEC claims bankruptcy and the sale of the ECEC plant will leave just $5 million total for all unsecured creditors, while ECEC owes DE—just one unsecured creditor—alone over $400 million under the Agreement" *Id.* at 13 n.15.

24.     On April 20, 2022, in Delaware Bankruptcy Court, Direct served Ector with document requests and filed notice that it had purportedly served Invenergy LLC with a subpoena. The discovery appears to relate to pending motions filed in Ector's chapter 11 case. The discovery requests overlap with document requests that Direct previously served in the State Court Action upon Ector and Invenergy LLC.

25.     Ector now files this Notice of Removal as is its right under federal law.

---

[6] Direct did not file an opposition to Ector's motion to dismiss as the claims against Ector are stayed pursuant to Section 362 of the Bankruptcy Code. *See* Ex. E (Bankr. D.I. 55) at 4 n.12. Ector asserts that Direct's attempt to control claims that are property of the estate may constitute a violation of the automatic stay, and reserves its rights to seek an appropriate order at a later point in this case.

## GROUNDS FOR REMOVAL

26. Under 28 U.S.C. § 1452(a) "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." The district court has original jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

### A. The State Court Action "Arises In" Ector's Bankruptcy Case

27. Federal bankruptcy courts may hear and determine any "core proceeding" that "arises under" or "arises in" an action under title 11. *176-60 Union Tpk., Inc. v. Howard Beach Fitness Ctr., Inc.*, 209 B.R. 307, 310-11 (S.D.N.Y. 1997). The Second Circuit has construed a bankruptcy court's core jurisdiction "as broadly as possible" so as to be "close to or congruent with constitutional limits." *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 229 (2d Cir. 2002) (internal quotations and citations omitted). This jurisdictional reach is "essential to the efficient administration of bankruptcy proceedings[.]" *Id.*

28. The State Court Action "arises in" Ector's chapter 11 case because it concerns, *inter alia*, the administration of the Debtor's estate which constitutes a "core proceeding" under 28 U.S.C. § 157(b). Claims "arise in" chapter 11 proceedings when they are "unique to or uniquely affected by the bankruptcy proceedings" and are thus "core proceedings." *See United States Lines, Inc. v. Am. S.S. Owners Mut. Protection & Indem. Ass'n, Inc.* (*In re U.S. Lines, Inc.*), 197 F.3d 631, 636-37 (2d Cir. 1999). With respect to state law claims, "the determinative issue is whether claims that appear to be based in state law are really an extension of the proceedings already before the bankruptcy court." *Baker v. Simpson*, 613 F.3d 346, 350 (2d Cir. 2010).

29. The claims and causes of action underlying the State Court Action are "core proceedings" within the meaning of 28 U.S.C. § 157(b)(2)(A), (B) and (C) because the State Court

Action concerns, *inter alia*, (i) matters concerning the administration of the Debtor's estate, and (ii) the allowance or disallowance of purported claims of the Debtor's largest unsecured creditor against the estate. The claims at issue in the bankruptcy turn on the conduct of Ector and Direct. Ector also has yet to assert affirmative defenses and counterclaims in the State Court Action, including a defense that the Agreement is invalid and unenforceable because it was procured by fraud. The State Court Action involves substantial and costly discovery against Ector. For all these reasons, the Court has "arising in" jurisdiction.

30. Bankruptcy courts may also adjudicate state law claims pursuant to "arising in" jurisdiction when those claims are at the "heart" of the administration of the bankruptcy estate, as is the case here. *See Cent. Vt. Public Serv. Corp. v. Herbert*, 341 F.3d 186, 191 (2d Cir. 2003). The claims asserted by the Direct in the State Court Action may affect proposed distributions to Ector's unsecured creditors. The removal of the State Court Action will also assist in administering Ector's estate by potentially avoiding concurrent proceedings addressing the same subject matter.

31. Further, Direct likely intends to file a proof of claim in the Bankruptcy Case to assert the same claims that are at issue in the State Court Action. Ector would object to any proof of claim which Direct may file. If so, it will be necessary to resolve the claim objection. Such attendant process is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B). If removal does not occur, resolution of that claim objection could result in duplication of litigation with the State Court Action.

32. Direct's alter ego claims against Invenergy LLC and Invenergy Thermal also "arise in" Ector's bankruptcy. After a bankruptcy filing, "creditors lack standing to assert claims that are 'property of the estate.'" *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014) (citations omitted). The "estate" is defined in Section 541(a)(1) of the Bankruptcy Code and "includes causes of action,

which are considered property of the bankruptcy estate if the claim existed at the commencement of the filing and the debtor could have asserted the claim on his own behalf under state law." *Id.* (internal quotations and citation omitted).  A bankruptcy court is the only court with subject-matter jurisdiction to decide whether a claim or cause of action is property of a debtor's bankruptcy estate. *Hafen v. Adams (In re Hafen)*, 616 B.R. 570 (B.A.P. 10th Cir. 2020); *see also In re DeFlora Lake Dev. Assocs., Inc.*, 571 B.R. 587, 593 (Bankr. S.D.N.Y. 2017) ("A determination on whether certain property is property of the bankruptcy estate is not only a core proceeding, it is a proceeding that involves this Court's exclusive jurisdiction.").[7]

33.	Alter ego claims against non-debtors are property of the debtor's estate where a claim is "'a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor[.]'" *Id.* at 879 (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989)).  Following a bankruptcy filing, a bankruptcy trustee is the party who has standing to assert an alter ego claim on behalf of a creditor of the debtor. *In re Alper Holdings USA, Inc.*, 398 B.R. 736, 759 (S.D.N.Y. 2008); *In re Keene Corp.*, 164 B.R. 844, 849 (Bankr. S.D.N.Y. 1994).

34.	Here, the alleged alter ego claims against Invenergy LLC and Invenergy Thermal are potentially property of the Debtor's estate.  Direct's alter ego claims are based on alleged facts generally available to any creditor.  Thus, adjudication of the alter ego claims against Invenergy LLC and Invenergy Thermal are part of administering the Debtor's estate and are within the bankruptcy court's core jurisdiction.

---

[7]  Following the commencement of a bankruptcy, the bankruptcy court has exclusive jurisdiction "of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate[.]" 28 U.S.C. § 1334(e).

**B.    The State Court Action Is "Related To" Ector's Bankruptcy Case**

35.    Bankruptcy courts also possess "related to" jurisdiction. "Related to" jurisdiction exists where the outcome of the removed litigation could "have any conceivable effect on" the bankrupt estate. *Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992) (internal quotations omitted). This broad interpretation follows the Supreme Court, which has found "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) (internal quotations and citation omitted).

36.    Here, the outcome of the State Court Action could well affect the rights of Ector and Direct in the Bankruptcy Cases and the Debtor's estate. Indeed, the State Court Action and Plaintiff's claims in Ector's bankruptcy are tied together. *See In re WorldCom, Inc. Secs. Litig.*, 293 B.R. 308, 321 (S.D.N.Y. 2003) ("The existence of strong interconnections between the third party action and the bankruptcy has been cited frequently by courts in concluding that the third party litigation is related to the bankruptcy proceeding."). Any resolution of Direct's claims against Defendants will directly affect the amount of monies available for distribution to the Debtor's unsecured creditors.

37.    Moreover, "related to" jurisdiction also extends to claims against non-debtors where a finding of liability could give rise to indemnification or contribution claims against the debtor. *SPV Osus Ltd. v. UBS AG,* 882 F.3d 333, 340 (2d Cir. 2018) ("In determining whether potential claims by third party defendants against the debtor for either indemnification or contribution give rise to "related to" jurisdiction over litigation to which the debtor is not a party, courts in this circuit . . . have generally found jurisdiction where there is a 'reasonable' legal basis for the claim.") (internal quotations and citations omitted); *Lothian Cassidy LLC v. Ransom*, 428

B.R. 555, 560 (E.D.N.Y. 2010). Thus, there is "related to" jurisdiction because any judgments against the non-debtor Defendants in the State Court Action could result in the liquidation of an indemnification or contribution claim against Ector.[8]

## ADDITIONAL PROCEDURAL REQUIREMENTS

38. This Notice of Removal is timely filed, as it is being filed within ninety (90) days after the voluntary petition in Ector's bankruptcy case. 11 U.S.C. § 301(b); 28 U.S.C. § 1452; Fed. R. Bankr. P. 9027(a)(2).

39. Pursuant to Federal Rule of Bankruptcy Procedure 9027(a)(1), Ector consents to the entry of final orders or judgments by the Delaware Bankruptcy Court.

40. Pursuant to 28 U.S.C. § 1446(d) and Federal Rule of Bankruptcy Procedure 9027(b)-(c), Ector will file a copy of this Notice of Removal with the Clerk of Court for the State Court. Ector also will promptly serve a copy of this Notice of Removal on Direct's attorneys.

41. Pursuant to 28 U.S.C. § 1446(a) and Federal Rule of Bankruptcy Procedure 9027(a)(1), venue resulting from the removal of this action to this Court is proper as this Court is within the district in which the State Court Action was filed.

WHEREFORE, Ector hereby removes this action from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York.

---

[8] This Court can also exercise supplemental jurisdiction over any remaining claims pursuant to 28 U.S.C. § 1367. *See In re Cuyahoga Equip. Corp.*, 980 F.2d at 115; *Allen v. Kuhlman Corp.*, 322 B.R. 280, 283-84 (S.D. Miss. 2005).

April 25, 2022

**CROWELL & MORING LLP**

By: /s/ *S. Starling Marshall*
    S. Starling Marshall
    Gregory Plotko
    Gary A. Stahl
    Ellen M. Halstead

590 Madison Avenue
New York, NY 10022
smarshall@crowell.com
gplotko@crowell.com
gstahl@crowell.com
ehalstead@crowell.com
(212) 223-4000

    -and-

Larry Eisenstat (*pro hac vice* motion forthcoming)
Scott Winkelman (*pro hac vice* motion forthcoming)
1001 Pennsylvania Avenue, NW
Washington, DC 20004
leisenstat@crowell.com
swinkelman@crowell.com
(202) 624-2500

*Attorneys for Defendant Ector County Energy Center LLC*